Case:12-20238-JSD Doc#:170 Filed:04/15/15 Entered:04/15/15 16:50:40 Page:1 of 13

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Brunswick, Georgia
By jbergen at 4:48 pm, Apr 15, 2015

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Brunswick Division

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KIPP LESHONE TATE and | ) | CHAPTER 7 CASE |
| CAROLYN TATE | ) | NUMBER <u>12-20238</u> |
| | ) | |
| Debtors | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| R. MICHAEL SOUTHER, TRUSTEE | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| KIPP LESHONE TATE | ) | |
| | ) | |
| Debtor/Respondent | ) | |

**OPINION AND ORDER FINDING RESPONDENT REMAINS IN CONTEMPT AND ENTRY
OF MONEY JUDGMENT**

This matter is before me on the status of Debtor Kipp Leshone Tate's efforts to purge his civil contempt and the chapter 7 Trustee's motion requesting that I enter a money judgment for the value of the property that Tate has not yet turned over to the Trustee. (ECF No. 167, 163.)[1] I find that Tate remains in civil contempt. However, further civil sanctions are

---

[1] References to the chapter 7 case docket appear in the following format: (ECF No. ___.)

no longer appropriate. Further, I grant the Trustee's Motion and find that the entry of a money judgment against Tate in favor of the bankruptcy estate is appropriate now.

## FINDINGS OF FACT

Tate and his wife, Carolyn Davis Tate, filed for chapter 7 bankruptcy relief on February 27, 2012. (ECF No. 1.) Schedule B of the Tates' bankruptcy petition lists an "Arbitration Claim Pending vs. D.C. Metropolitan Dept." as property of the estate. (Sch. B of ECF No. 1, at 10.)

On June 25, 2013, Tate received a net payment of $171,534.61 from the arbitration proceeding ("Arbitration Award"). (ECF No. 75 ¶ 4.) Of the amount awarded, the parties agree that $120,873.39—less Tate's $10,000.00 exemption—constitutes property of the Tates' chapter 7 bankruptcy estate. (ECF No. 76 ¶ 3.) The remaining $50,661.22 represents postpetition earnings and benefits and therefore is not subject to turnover. (Id.)

On September 12, 2013, in response to the Trustee's Motion to Compel Turnover, I ordered Tate to turn over and account for the Arbitration Award ("Turnover Order"). (ECF No. 56.)

Shortly thereafter, Tate notified the Trustee that he had spent the remaining funds from the Arbitration Award and

therefore would be unable to comply with the Turnover Order. On October 2, 2013, the Trustee filed a Motion for Order of Contempt and Sanctions requesting the court find Tate: "[i]n willful contempt for his failure to comply with this Court's Order dated September 12, 2013, . . . [and] to order the incarceration of Tate until he complies with the aforesaid Order . . . ." (ECF No. 62.)

On March 28, 2014, I found Tate in civil contempt for his failure to comply with the Turnover Order ("Civil Contempt Order"). (ECF No. 86.)[2]

Nearly seven months later, on October 21, 2014, after various efforts failed to coerce Tate's compliance, the United States District Court for the Southern District of Georgia ("District Court") issued an arrest warrant for Tate pursuant to my request. In re Tate, No. 14-mc-00007 (S.D. Ga. Oct. 21, 2014).

On November 7, 2014, Tate turned himself in to authorities in Baltimore, Maryland, and was released conditioned on his appearance before me at a hearing on November 12, 2014.

At that hearing, Tate failed to provide any additional information as to the disposition of the Arbitration Award. Finding no basis to request that the District Court lift the

---

[2] This opinion and order includes additional background information regarding the Turnover Order and the events leading up to my finding of civil contempt. Also available, In re Tate, No. 12-20238, 2014 WL 1330567, 2014 Bankr. LEXIS 1304 (Bankr. S.D. Ga. Mar. 28, 2014).

3

AO 72A
(Rev. 8/82)

arrest warrant, I ordered Tate held in custody until he was willing to either turn over or account for the money he received from the Arbitration Award. I scheduled a second hearing 48 hours later to provide Tate an opportunity to do so.

At the second hearing on November 14, 2014, Tate re-asserted his prior testimony that he had used the Arbitration Award for living expenses. However, Tate expressed confusion in response to specific questions regarding $78,541.91 of the Arbitration Award that was withdrawn from the Tate's bank account when it was closed on August 21, 2013. Tate insisted he was confused and did not understand that merely stating he spent the money on living expenses was not a sufficient accounting. This confusion existed in spite of previously submitting a detailed accounting that, although subsequently proven false, stated he had gambled the funds away and provided the casino locations, dates, and amount of losses. (See ECF Nos. 76-1, 76-2.)

Following the November 14, 2014, hearing I issued an order ("Conditional Release Order") releasing Tate from custody conditioned on his compliance with the following:

> In order to afford Tate every opportunity to comply with the Turnover Order or to establish his inability to comply, **IT IS ORDERED** that Tate be immediately released from custody of the United States Marshall Service subject to these conditions:
>
>> I. Tate tender to the court the sum of $2,800.00 in compliance with the sanction imposed by the Contempt Order; and

       II. Tate comply with the Turnover Order by either:

          a. Tendering payment to the chapter 7 Trustee in the amount of $43,541.91 or such sums remaining unaccounted for after complying with subsection (b) below; or

          b. Filing with the court and submitting to the chapter 7 trustee an accounting which includes:

              i. A detailed accounting of all income into his household from all sources, including the $43,541.91 in unaccounted funds, between August 21, 2013, and January 31, 2014; and

              ii. A detailed accounting of all living expenses he and his wife incurred, including all supporting documentation from any service provider to the household (e.g., utility bills, confirmation of car payments, documentation of rental payments, etc.), between August 21, 2013, and January 31, 2014; and

**FURTHER ORDERED** that Tate appear at a continued hearing on civil contempt and order of incarceration on January 23, 2015, at 11:00 am, U.S. Bankruptcy Court, U.S. Courthouse, 3rd Floor Courtroom, Brunswick, GA; and

**FURTHER ORDERED** that if Tate does not sufficiently meet the conditions of his release or appear at the hearing on January 23, 2015, he will be taken into custody and incarcerated until such time as he purges his contempt.

(ECF No. 145.)[3]

---

[3] The Conditional Release Order provides additional information regarding the calculation of $43,541.91 as the amount of the Arbitration Award remaining unaccounted for.

On December 2, 2014, Tate complied with Section I of the Conditional Release Order by tendering payment to the court in the sum of $2,800.00. (ECF No. 155.)

As the scheduled hearing date approached, Tate had failed to provide any accounting or tender any further payment to the court. On January 20, 2015, I vacated the hearing and fixed February 2, 2015, as a deadline for Tate to file with the court and submit to the Trustee the accounting required in the Conditional Release Order.

On February 2, 2015, Tate had still not submitted the required accounting. A week later, on February 9, 2015, the Trustee filed a motion requesting permission to amend the Motion to Compel Turnover or, alternatively, the Motion for Order of Contempt and Sanctions, to include a prayer that a judgment be entered against Tate for the value of the estate property ("Motion for Judgment"). (ECF No. 163.)

On March 2, 2015, notice was issued to all creditors and parties in interest establishing March 30, 2015, as a deadline for written objections to the Motion for Judgment. The notice stated that if no objections were received, an order granting the Motion for Judgment would be entered. No objections were received.

On March 19, 2015, more than a month and a half after the deadline I set, Tate submitted a "Statement of Accounting of

6

$43,541.91 From 8/21/2013 Thru 1/31/2014" to the court and the Trustee. (ECF No. 167.)

Tate's accounting is untimely and insufficient.

First, the accounting does not include any information regarding income brought into the household during this time period. Section II(b)(i) of the Conditional Release Order specifically required Tate to provide "[a] detailed accounting of all income into his household from all sources, including the $43,541.91 in unaccounted funds, between August 21, 2013, and January 31, 2014." (ECF No. 145, at 6.) Records previously submitted as evidence indicate that Tate was working for a portion of this period and receiving more than $4,000.00 per month in take-home pay. (ECF No. 76-2.) This income and any other income should have been included in the accounting.

Second, the accounting does not provide any supporting documentation from service providers to the household as required by Section II(b)(ii) for living expenses. (ECF No. 145, at 6.) For example, the accounting estimates a monthly "Washington Gas" bill of $108.00 but does not provide copies of previous bills to support that estimate. (ECF No. 167, at 1.)

Third, the accounting only includes roughly $18,000.00 in detailed expenses and $17,000.00 in total monthly expenses—e.g., rent, utilities, etc. Therefore, even assuming no other income during this period was earned, approximately $8,500.00 of

7

the $43,541.91 remains unspent and should be available to turn over to the Trustee. However, given that previous records show that Tate had income during this period, additional money should be available to turn over based on Tate's accounting of his expenses and spending. Tate has not made any payments to the Trustee in partial or full compliance with Section II(a) of the Conditional Release Order.

## CONCLUSIONS OF LAW

### I.

### Tate Remains in Civil Contempt.

I issued the Conditional Release Order to afford Tate every opportunity to comply with the Turnover Order or establish his inability to comply. (ECF No. 145, at 6.) As described above, the accounting Tate submitted accomplishes neither of those goals. Tate remains in contempt, but no further civil sanctions are imposed.

The Conditional Release Order specifically provides that if Tate fails to sufficiently meet the conditions of his release, he will be taken into custody and incarcerated until such time as he purges his contempt. (Id. at 7.) Tate has failed to purge his contempt and it is within my authority to request that the District Court issue another arrest warrant. See In re

AO 72A
(Rev. 8/82)

Tate, 521 B.R. 427, 440 (Bankr. S.D. Ga. 2041) (citing In re Lawrence, 279 F.3d 1294, 1297 (11th Cir. 2002)).

However, after more than a year and a half of attempts by the Trustee and this court to extract the true, current location of the Arbitration Award, it is clear that Tate has no intention of properly complying with the Turnover Order, even after a period of incarceration and a looming, real threat of further incarceration. Although I still believe Tate is fully capable of compliance, incarceration at this time would not be effective to coerce compliance. See Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1558 (11th Cir. 1996)(civil contempt sanctions cannot be punitive in nature); Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1530 (11th Cir. 1992)(civil contempt sanctions lose their coercive effect when they become punitive); U.S. ex rel. Thom v. Jenkins, 760 F.2d 736, 740 (7th Cir. 1985)(noting possibility that at some point it becomes necessary to conclude that incarceration no longer serves the purpose of coercion in civil contempt proceeding).

## II.

### A Money Judgment Against Tate in Favor of the Bankruptcy Estate is Appropriate Now.

The proposed order included with the Motion for Judgment states that the issuance of a money judgment "shall be

held in the breast of the court" until such time as it is deemed appropriate. (ECF No. 163.) In granting the Trustee's motion, I find that now is the appropriate time to enter a money judgment against Tate for the value of the property of the estate not turned over.

The Bankruptcy Code allows the court to require an entity in possession of property of the bankruptcy estate to "deliver to the trustee, and account for, such property *or the value of such property.*" 11 U.S.C. § 542 (emphasis added); see In re White, 389 B.R. 693, 699 (B.A.P. 9th Cir. 2008)(affirming bankruptcy court's turnover order and money judgment for cash proceeds the debtor received that became property of the estate); In re Forbes, 58 B.R. 706, 707 (Bankr. S.D. Fla. 1986)(issuing money judgment in favor of trustee for proceeds of settlement that debtor refused to turn over).

At the outset of this case it was not appropriate to enter a money judgment for the value of the estate's interest in the Arbitration Award in lieu of Tate's immediate turnover of the property itself, i.e., the money. See In re Gentry, 275 B.R. 747, 751 (Bankr. W.D. Va. 2001)(citing In re U.S.A. Diversified Products, Inc., 193 B.R. 868, 879 (Bankr. N.D. Ind. 1995) aff'd, 196 B.R. 801 (N.D. Ind. 1996) aff'd sub nom., Matter of USA Diversified Products, Inc., 100 F.3d 53 (7th Cir. 1996) (money judgment is appropriate remedy available to the trustee when

debtor no longer has possession of the property sought). At that time I believed that Tate still possessed a significant portion of the Arbitration Award in cash. I did not believe Tate's testimony that he gambled away $78,541.91 that was withdrawn from the Tates' bank account at the time the Trustee filed the Motion to Compel Turnover.[4] (ECF 137.) Even six months ago I rejected Tate's offer to consent to a money judgment and garnishment order for this same reason:

> **Trustee:** [F]or whatever it's worth at this juncture, Mr. Tate asked me to state on his behalf that we talked out in the hall and he indicated that he would like to somehow resolve this entire matter. And in conjunction, he indicated that he was willing to submit to a judgment for the amount of money that is owed, and, further, to . . . consent to a garnishment of his wages to the extent allowed . . . . Is that right, Mr. Tate?
>
> **Tate:** Yes.
>
> **Trustee:** So for whatever that is worth I will go ahead and submit that to the court.
>
> **Court:** All right. Mr. Tate, the problem that I have with this judgment and garnishment, first, I have to believe that the money is gone, and based upon the record in this case, hearing after hearing after hearing, and the slow dribble of facts in this case that have come about . . . I just find it fantastic and unbelievable that your wife took this money out of the bank and . . . then over a course of a few weeks you gambled all this money away but have nothing to substantiate that other than your testimony that I swear judge that is what I did with the money.

(Sept. 11, 2014, Hr'g Tr. at 4:8-5:17, ECF No. 139.)

---

[4] Tate later admitted that this testimony was false. (Sept. 11, 2014 Hr'g Tr. at 16:12-17:6, ECF No. 139.)

11

However, after a year-and-a-half, my efforts to coerce Tate's compliance have produced limited tangible benefits for creditors. As described above, it appears now that no matter the personal cost or risk, Tate remains unwilling to fully comply and provide information regarding the disposition of the Arbitration Award. I have already transmitted a record of Tate's actions in this case to the United States Attorney for the Southern District of Georgia for the purpose of considering various criminal charges. However, a criminal prosecution will not provide the creditors in this case any further monetary benefit. The entry of a judgment now, while Tate appears to still be working, will at least provide the Trustee an opportunity to recover the remaining portion of the Arbitration Award for the benefit of the creditors, rather than continue a game of cat and mouse with Tate.

Out of the full Arbitration Award, Tate was required to turn over a total of $110,873.39. (ECF No. 76 ¶ 3.) To date, Tate has turned over $19,583.00 in cash and a 2007 Ford Explorer Sport Trac ("Vehicle") to the Trustee. Because the Trustee has not yet sold the Vehicle, Tate still owes the bankruptcy estate $91,290.39. It is appropriate to enter a judgment in that amount now.

**ORDER**

**IT IS ORDERED** that Kipp Leshone Tate has not purged his contempt and thus, remains in civil contempt; and

**FURTHER ORDERED** that a money judgment against Kipp Leshone Tate is appropriate now and will be entered in the principal amount of $91,290.39, together with future interest at the rate of 0.22% per annum from this date.

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this ___ day of April, 2015.